**Opinion issued June 23, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00724-CV

————————————

**RONNY PUGA AND RICKEY PUGA, Appellants**

**V.**

**BARBARA SALESI, Appellee**

---

**On Appeal from the 133rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-28575**

---

## MEMORANDUM OPINION

Barbara Salesi filed a declaratory judgment action against Ronny and Ricky

Puga after a boundary dispute developed between the two neighbors. The trial

court resolved some issues by directed verdict; other issues were presented to the

jury for resolution. Salesi obtained a judgment against the Pugas for $7,217.19 in damages and $51,169.36 in attorney's fees.

The Pugas appeal that judgment and contend that the trial court erred by (1) awarding Salesi damages on her encroachment claim, (2) awarding Salesi any attorney's fees or, alternatively, awarding too much, and (3) failing to submit for the jury's determination the Pugas' own attorney's fee claim.

We affirm.

## Background

This is a boundary dispute between Barbara Salesi and the owners of the property next door, Ronny and Rickey Puga. Several years before the litigation, the Pugas repaired a sewage leak in their backyard and asked Salesi for permission to temporarily remove the boundary fence to access underground pipes. She agreed. The Pugas removed the chain-link fence but also allegedly removed and replaced one of Salesi's support posts. Salesi alleged that the Pugas also removed survey irons that marked the property line.

Sometime after the first encounter, the Pugas asked permission to attach a portion of a new fence they were constructing to a different support post on Salesi's property. She refused. Nonetheless, according to Salesi, they attached their fence to her post while she was at work. When she realized what had occurred, the parties argued and a witness called the police to intervene. Ultimately, Salesi

2

obtained a judgment against the Pugas for $350 to replace the post to which they attached their new fence. Subsequently, another dispute arose when Salesi alleged that the Pugas damaged three additional fence posts on her property.

As tensions grew, the Pugas' attorney sent Salesi a letter alleging that one of her fence posts was on the Pugas' property and threatening litigation. Salesi investigated and concluded that, when the Pugas took down her fence to repair their sewage line, they also removed one of her fence posts and repositioned it within their property. She testified that she understood the attorney's letter to be referencing this post. Salesi responded to the Pugas' letter by suggesting that the parties adhere to a 2006 survey of her property[1] and that the fence be moved, if necessary, to return it to the property line shown in that survey. According to Salesi, the Pugas never responded to her suggestion.

Salesi filed a declaratory judgment action, seeking a declaration that the 2006 survey accurately depicted the property lines and that the Pugas were bound by that demarcation. She also sought damages for the cost to return the fence posts to their original location. In other words, she sought a declaration and damages to resolve in her favor the allegation in the Pugas' presuit letter that her fence post was on their property.

---

[1] That survey was conducted by court order in a separate lawsuit in which another neighbor sued Barbara Salesi. The court ordered a "survey [of] both properties in question with special attention to the disputed boundary line . . . ." The 2006 survey established the perimeter line of all of Salesi's property.

While suit was pending, Salesi discovered that, when the Pugas were doing the sewage line repairs, they installed an underground pipe that ran under the chain-link fence and connected to pipes within her property. She sought damages for rerouting the Pugas' pipe to remove it from her property.

Salesi filed a "motion to enforce court order," requesting that the trial court bind the parties to the 2006 survey. The Pugas did not respond to the motion. The motion was granted.

Separately, Salesi moved for the trial court to take judicial notice that the 2006 court-ordered survey "is the proper survey of [her] property and the border and with the Pugas' property, as well." Salesi explained that she filed the previously granted motion to enforce "to put the issue of where the proper property lines are to bed" and that, after the Pugas failed to respond or to designate an expert and the trial court granted the motion, they should not be permitted to challenge the location of the property lines. After discussion, the trial court confirmed that Salesi could refer to the 2006 survey during trial as "the survey that this Court has held to be . . . the actual property lines for these properties."

Salesi preadmitted her trial exhibits, including the 2006 survey, without objection. The parties also entered into a stipulation regarding Pugas' backyard plumbing work. They stipulated as follows: "The parties stipulate that the PVC pipe as depicted in Plaintiff's Ex. 8 was installed by Defendants and runs from the

4

Puga property onto the Salesi property and connects to the concrete pipe that runs through the Salesi property."

During trial, Salesi testified that she wanted the fence moved back to the property line and the Pugas' pipe disconnected and rerouted. Salesi's contractor testified about the cost to move the fence and reroute the pipe. He offered two alternative routes for moving the pipe, the least expensive of which was approximately $5,000.

The Pugas, their contractor, and one of their former tenants testified as well. During direct examination, the Pugas disputed moving Salesi's fence post; however, on cross-examination they agreed that they had testified otherwise in their depositions.

Attorneys for both sides testified about attorneys' fees. Salesi's attorney testified that she should be awarded $40,700 in reasonable and necessary attorney's fees to cover pretrial through post-judgment services and an additional $25,000 in case of appeal. The Pugas' attorney testified that they should be awarded $53,425.22 in fees.

At the conclusion of the evidence, Salesi moved for a directed verdict on two of her claims: (1) a declaration that the property boundary is where indicated

in the 2006 survey and that all of her fence posts are within her property[2] and (2) a liability finding on her encroachment claim based on the Puga pipe crossing the property boundary and tying into her pipe. The trial court granted a directed verdict on both issues.

The single liability question in the court's charge asked whether the Pugas were "negligent," and the jury found that both of them were. The second question asked the cost to (1) replace and reposition the fence, (2) replace other fence posts, and (3) replace and reposition the survey iron that Salesi alleged had been removed by the Pugas. The jury awarded an amount for each, totaling $2,070.87.

The next question was a damages question related to the directed verdict for encroachment and asked the cost to remove and reposition the plumbing line from Salesi's property to be within the boundary of the Pugas' property. The jury answered the damages question by awarding zero dollars.

Next, the jury was asked about Salesi's attorney's fees.[3] The jury awarded $35,000 for past fees and zero dollars for appellate fees. The trial court did not submit a jury question on the amount of reasonable and necessary attorney's fees

---

[2] Specifically, it was a declaration related to the proposed jury question whether "all of the Plaintiff's fence posts other than the Puga pipe post [which the Pugas allegedly moved while making sewer pipe repairs] are within the boundaries of Plaintiff's property."

[3] Salesi elected to have the jury determine her attorney's fees.

6

for the Pugas. The Pugas neither requested the question nor objected to its omission.

Finally, the jury was asked whether Rickey or Ronny Puga acted with malice. The jury concluded that they did not and awarded no exemplary damages.

Salesi filed a motion to disregard jury findings and for entry of final judgment. First, she argued that the trial court should disregard the jury's zero damages finding with regard to the encroachment claim. She argued that she conclusively proved through expert testimony a minimum of $5,146.32 as the cost to remove the Pugas' pipe from her property.

Second, she argued that she established her attorney's fees with undisputed evidence and, therefore, requested that the trial court disregard the jury's finding and increase her fee award to $51,169.39.

The Pugas did not respond to Salesi's motion to disregard. There is no written order in the record concerning the motion; however, the final judgment reflects that the trial court did award encroachment damages and attorney's fees in the requested amounts. The Pugas timely appealed.

**Encroachment Damages**

In their third issue, the Pugas contend that the trial court erred by disregarding the jury's decision not to award damages on Salesi's encroachment claim.

7

## A. Standard of review

It is within the jury's province, as the factfinder, to resolve conflicts in evidence and determine issues of witness credibility; however, a jury "cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted." *City of Keller v. Wilson*, 168 S.W.3d 802, 820 (Tex. 2005).

A trial court may disregard a jury's finding that has no support in the evidence. TEX. R. CIV. P. 301; *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003); *Brown v. Bank of Galveston, N.A.*, 963 S.W.2d 511, 513 (Tex.1998); *Williams v. Briscoe*, 137 S.W.3d 120, 124 (Tex. App.—Houston [1st Dist.] 2004, no pet.). "A trial court may disregard a jury's negative finding and substitute its own affirmative finding only if the evidence conclusively establishes the affirmative finding." *Cale's Clean Scene Carwash, Inc. v. Hubbard*, 76 S.W.3d 784, 786 (Tex. App.—Houston [14th Dist.] 2002, no pet.). We view the evidence in the light most favorable to the finding. *Tiller*, 121 S.W.3d at 713; *Williams*, 137 S.W.3d at 124.

## B. Damages were established

At trial, Salesi's contractor testified that the Pugas' underground pipe could be rerouted off of Salesi's property in one of two ways, the least expensive of which would cost approximately $5,000 while the more expensive would cost over $9,000. His work estimates were admitted into evidence without objection. He was

8

not cross-examined on the cost projections. The Pugas did not designate an expert on the issues of encroachment or damages related to Salesi's claim. In her motion to disregard jury findings, Salesi requested that the trial court award the lower of the two estimate amounts as encroachment damages. The trial court awarded that amount.

Salesi contends that she established damages of at least the amount awarded through undisputed expert testimony at trial. But the Pugas contend that Salesi could not have established a right to that lower amount of damages as a matter of law because the expert testified about two different work plans with two different total costs, which according to the Pugas, "by definition contradict each other."

Salesi's expert, however, proffered undisputed evidence that the cost of rerouting the pipe would be at least the amount that the trial court awarded. Although the Pugas cross-examined Salesi's expert about the nature of the encroachment and whether it existed before they purchased the property, they did not challenge the expert's testimony regarding the estimated amounts to reroute the pipe or proffer their own evidence about the cost. Because the evidence adduced at trial conclusively proved damages of at least the amount awarded, we conclude that the trial court did not err by disregarding the jury's zero damages determination and, instead, awarding damages on the encroachment claim in the

9

amount requested, which corresponded to the lesser of the two repair estimates. *See City of Keller*, 168 S.W.3d at 820.

We overrule this issue.

## Salesi's Claim for Attorney's Fees

The Pugas make four arguments challenging Salesi's fee award. First, they argue that there is no basis in law for an award of attorney's fees because Salesi did not obtain a declaratory judgment against them. Second, they argue that a declaratory judgment action is an improper vehicle to resolve property boundaries and, therefore, the Declaratory Judgments Act does not support the award of attorney's fees. Third, they argue that the fee should have been reduced to segregate between recoverable and nonrecoverable claims. Fourth, they challenge the award because the jury charge did not require that the fees awarded be necessary. We turn first to whether a final judgment must contain a declaration to entitle a movant to attorney's fees under the Declaratory Judgments Act.

### A. Declaration in Judgment Unnecessary for Fee Award under the Act

Salesi's second amended petition requested a declaration that she owned the property depicted in the 2006 survey. After both parties rested, Salesi was granted a directed verdict on her declaratory judgment claim that her property boundaries align with the 2006 survey and that her fence posts are within that designated

property line. The final judgment, however, does not contain this declaratory relief.

Under the Declaratory Judgments Act, a trial court may exercise its discretion to award attorney's fees to the prevailing party, the nonprevailing party, or neither, considering the equities in the case. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (providing that trial court may award attorney's fees that are equitable and just in "any proceeding under this chapter"); *Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 637 (Tex. 1996) (holding that award of attorney's fees in declaratory judgment action is within trial court's discretion and is not dependent on finding that party substantially prevailed). "Moreover, the statute does not require a judgment on the merits of the dispute as a prerequisite to a fee award." *Feldman v. KPMG LLP*, 438 S.W.3d 678, 685 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (discussing *Barshop* and concluding that trial court has power to award attorney's fees under Section 37.009 even if declaratory relief claim is dismissed). Thus, the Pugas are incorrect to contend that the absence of declaratory relief from the final judgment precludes, as a matter of law, an attorney's fee award in this declaratory judgment action.

## B.    Boundary disputes may be resolved with declaratory relief

The Pugas argue that Salesi cannot resolve a property boundary dispute through a declaratory judgment action and, therefore, the Declaratory Judgments

11

Act does not support the attorney's fees awarded to her in this case. They rely on *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004), to support their argument. We disagree.

Although *Martin* held that a boundary dispute must be resolved through a trespass to try title action instead of a declaratory judgment, 133 S.W.3d at 265, that opinion was later superseded by an amendment to Section 37.004, which specifically permits resolution of boundary disputes through declaratory judgment actions. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(c); *see also Nw. Indep. Sch. Dist. v. Carroll Indep. Sch. Dist.*, 441 S.W.3d 684, 689 (Tex. App.—Fort Worth 2014, pet. denied) (explaining that "the state legislature overruled *Martin* by adding Subsection (c) to Section 37.004 of the Declaratory Judgments Act" and, in doing so, "simply removed the prohibition, based on the supreme court's construction of the [Declaratory Judgments] Act in *Martin,* against using the Act to determine boundaries.").

Thus, Salesi was permitted to seek resolution of her property dispute through a declaratory judgment action, through which attorney's fees could be awarded. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.004(c) (permitting resolution of boundary disputes through declaratory judgment action); 37.009 (allowing recovery of attorney's fees in declaratory judgment action).

## C.    Unsegregated Attorney's Fees

The Pugas also argue that the attorney's fees awarded to Salesi were in error because she failed to segregate her attorney's fees. The Pugas makes two arguments in this regard. First, they argue that the attorney's fees incurred by Salesi pursuing the declaratory judgment relief should have been segregated from the fees incurred pursuing her negligence claim. Second, they argue that Salesi could only recover fees incurred before the court granted her motion and accepted the 2006 survey because, from that point forward, there was no dispute over the boundary line.

Assuming without deciding that Salesi was required to segregate her fees and failed to do so properly, the Pugas never objected to the attorney's fee testimony. Additionally, the jury question on attorney's fees asked generally about fees incurred "as a result of this lawsuit," and the Pugas failed to object to the wording of the question.

Because the Pugas failed to object to either the attorney's testimony on unsegregated fees or the related jury charge question, any error regarding segregation has been waived. *See, e.g.*, *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997) (holding that, "if no one objects to the fact that the attorney's fees are not segregated as to specific claims, then the objection is waived"); *Turull v. Ferguson*, No. 01-09-00067-CV, 2010 WL 2991087, at *4 (Tex. App.—Houston

13

[1st Dist.] July 29, 2010), *opinion supplemented on denial of reh'g*, No. 01-09-00067-CV, 2010 WL 3833944 (Tex. App.—Houston [1st Dist.] Sept. 30, 2010) (mem. op.) ("Because the Timberoof Defendants did not object to the Turulls' counsel's testimony regarding segregation of fees and because there was no objection to the wording of the charge that did not ask the jury to segregate attorney's fees, any error regarding segregation has been waived.").

## D.   Jury Not Asked if Attorney's Fees were "Necessary"

Finally, the Pugas argue that Salesi's fee award should be reversed and no attorney's fees awarded because Salesi failed to obtain a jury finding that her attorney's fees were necessary.

The Pugas did not object to the omission from the jury charge question of the element requiring that attorney's fees be necessary to be awarded. Failure to object to the omission of a necessary element in a claim waives a complaint on appeal that the element was not proven. *See* TEX. R. CIV. P. 279; *Shindler v. Marr & Assocs.*, 695 S.W.2d 699, 706 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.) (error waived regarding omitted issue related to attorney's fee award because party failed to object). Further, the missing element is deemed found if there was factually sufficient evidence on that issue at trial to support a finding. TEX. R. CIV. P. 279. Salesi's attorney testified that her fees were reasonable and necessary. Because there was factually sufficient evidence on the issue and the

14

Pugas failed to object to the omission of the "necessary" requirement in the jury charge question, we hold that the Pugas waived this complaint.

We overrule the Pugas' first and second issues.

**The Pugas' Claim for Attorney's Fees**

In their fourth issue, the Pugas contend that the trial court erred by not submitting to the jury a question on their attorney's fees. However, the Pugas did not submit a proposed jury question on their attorney's fees or object to its omission. Accordingly, any error in the jury charge related to an award of attorney's fees to the Pugas was not preserved. TEX. R. APP. P. 33.1(a); TEX. R. CIV. P. 279.

Further, whether to award attorney's fees to a party in a declaratory judgment action is a question of law addressed to the trial court's discretion based on its determination whether a fee award would be equitable and just. TEX. CIV. PRAC. & REM. CODE ANN. § 37.009; *City of the Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 754 (Tex. App.—Fort Worth 2008, pet. dism'd). Considering the record, the trial court may have determined that a fee award to the Pugas would not be equitable or just given their nonprevailing status at trial. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) (stating that trial court "may conclude that it is not equitable or just to award even reasonable and necessary

15

fees"). Consequently, even if the issue had been preserved, the Pugas have failed to demonstrate that the trial court abused its discretion by not awarding them fees.

We overrule the fourth issue.

## Conclusion

The judgment of the trial court is affirmed.

Harvey Brown
Justice

Panel consists of Justices Jennings, Bland, and Brown.